IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| SONYA DENISE LANDRUM, | ) | CIVIL ACTION NO. 9:15-3067-RBH-BM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of the final decision of the Commissioner wherein she was denied disability benefits.

This case was referred to the undersigned for a report and recommendation pursuant to Local Civil

Rule 73.02(B)(2)(a)(D.S.C.).

Plaintiff applied for Disability Insurance Benefits (DIB) and Supplemental Security

Income (SSI)[1] on March 15, 2012 (protective filing date), alleging disability beginning March 15,

2012, due to social anxiety disorder, depression, chronic pain/constipation, and gynecological

problems (R.pp. 17, 163, 165, 198). Plaintiff's claims were denied both initially and upon

reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which

was held on February 3, 2014. (R.pp. 51-93). The ALJ thereafter denied Plaintiff's claim in a

---

[1]Although the definition of disability is the same under both DIB and SSI; Emberlin v. Astrue,
No. 06-4136, 2008 WL 565185, at * 1 n. 3 (D.S.D. Feb. 29, 2008); "[a]n applicant who cannot
establish that [he] was disabled during the insured period for DIB may still receive SSI benefits if [he]
can establish that [he] is disabled and has limited means." Sienkiewicz v. Barnhart, No. 04-1542,
2005 WL 83841, at ** 3 (7th Cir. Jan. 6, 2005). See also Splude v. Apfel, 165 F.3d 85, 87 (1st Cir.
1999)[Discussing the difference between DIB and SSI benefits].



decision issued April 24, 2014. (R.pp. 17-26). The Appeals Council denied Plaintiff's request for a review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 1-5).

Plaintiff then filed this action in United States District Court. Plaintiff asserts that the ALJ's decision is not supported by substantial evidence, and that this case should be remanded to the Commissioner for further proceedings, or for an outright award of benefits. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that Plaintiff was properly found not to be disabled.

## **Scope of review**

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)); see also, Hepp v. Astrue, 511 F.3d 798, 806 (8th cir. 2008)[Noting that the substantial evidence standard is "less demanding than the preponderance of the evidence standard"].



The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a *de novo* judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'" Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

### Discussion

A review of the record shows that Plaintiff was thirty-three years old on her alleged onset of disability date, thirty-five years old at the time of the ALJ's decision, has a high school education, and past relevant work as a cleaner. (R.pp. 25, 163, 165, 199). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that she has an impairment or combination of impairments which prevent her from engaging in all substantial gainful activity for which she is qualified by her age, education, experience, and functional capacity, and which has lasted or could reasonably be expected to last for a continuous period of not less than twelve (12) months. After a review of the evidence and testimony in the case, the ALJ determined that, although Plaintiff does suffer from the "severe" impairments[2] of anxiety, depression, and social anxiety (R.p. 19), she nevertheless retained the residual functional capacity (RFC) to perform medium work[3] with limitations to unskilled work; no pace driven work; and only occasional interaction with the public, co-workers, and supervisors. (R.p. 22). At step four, the ALJ found that Plaintiff could

---

[2]An impairment is "severe" if it significantly limits a claimant's physical or mental ability to do basic work activities. See 20 C.F.R. § 404.1521(a); Bowen v. Yuckert, 482 U.S. 137, 140–142 (1987).

[3]"Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).



perform her past relevant work as a cleaner wit these limitations.  (R.p. 25).  The ALJ also obtained testimony from a vocational expert and alternatively found at step five that Plaintiff could also perform other jobs existing in significant numbers in the national economy with these limitations, and was therefore not disabled during the period at issue. (R.pp. 25-26).

Plaintiff asserts that in reaching this decision, the ALJ erred because she improperly ignored opinion evidence and gave significant weight to the non-examining opinions without adequate reasoning, failed to properly evaluate the opinion of consultative psychologist Dr. James Ruffing, failed to properly evaluate the opinion of treating psychiatrist Dr. Eric Winter, failed to properly evaluate the opinion of treating physician Dr. J. C. Hedden, Jr., and based her decision on a misstatement as to Dr. Ruffing's findings.  However, after a careful review and consideration of the evidence and arguments presented, the undersigned finds and concludes for the reasons set forth hereinbelow that there is substantial evidence to support the decision of the Commissioner, and that the decision should therefore be affirmed.  Laws, 368 F.2d at 642 [Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion"].

## Medical Records

Plaintiff's medical records reflect that on March 22, 2012, she was seen in individual therapy at Westgate Training and Consultation Network (Westgate).[4]  The session focused on spiritual and sexual issues.  The student therapist estimated Plaintiff's GAF as 45.[5]  (R.p. 305).

---

[4]The record indicates that Plaintiff first began counseling with MFT student therapists at Westgate in May 2010.  (R.pp. 300, 363).

[5]Clinicians use the GAF "to rate the psychological, social, and occupational functioning of a patient." Morgan v. Commissioner of Soc. Sec. Admin., 169 F.3d 595, 597 n.1 (9th Cir. 1999).  "A GAF score of 41 to 50 is classified as reflecting 'serious symptoms (e.g., suicidal ideation, severe (continued...)



On March 27, 2012, Plaintiff went to see Dr. Hedden, her primary care physician at Carolina Family Physicians, after a two-year absence from treatment.[6]  The case note states that Plaintiff was working as an office cleaner but was seeking disability because of anxiety.  She complained of anxiety and requested renewal of her prescription of Valium (which she stated she took as little as once a week).  Dr. Hedden noted that Plaintiff reported continued problems with constipation despite extensive work-up by her gynecologist and gastroenterologist, and that Plaintiff was unable to get blood work done due to costs and lack of insurance.  Dr. Hedden diagnosed anxiety and suggested that Plaintiff seek treatment through a free clinic for medication and blood work.  (R.p. 287).

On April 5, 2012, Plaintiff reported to a therapist at Westgate that she felt hopeless and sad, that life was pointless, that she could not be helped, and that she was scared she would never get past her anxiety and pain.  Plaintiff was noted to be neat, clean, quiet, and fidgety.  The student therapist recommended yoga exercises and assessed Plaintiff's GAF as 47.  (R.p. 304).  On April 18, 2012, a student therapist at Westgate indicated that Plaintiff's diagnoses were panic disorder with agoraphobia, avoidant personality disorder, severe menstrual cramps, and family relational issues.  A GAF of 47 was assessed.  The treatment plan was to help Plaintiff develop coping skills and self-soothing abilities, explore issues of sexuality and religion, set goals for therapy, and use art therapy to access Plaintiff's energy of fantasy to use for healing.  (R.p. 302).

---

[5](...continued)
obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job.).'"  <u>Boyd v. Apfel</u>, 239 F.3d 698, 702 (5th Cir. 2001).

[6]The record indicates that Plaintiff had been treated occasionally at Carolina Family Physicians since October 2007.  (R.pp. 287-290).



Dr. Pranay Patel, an internist, performed a consultative examination on May 23, 2012. He found that Plaintiff had a normal affect and no anxiety or depression, although she reported trouble with social anxiety when she was around a lot of people. Dr. Patel's impressions were social anxiety, depression, chronic pelvic pain, painful menstruation, and chronic constipation. Dr. Patel stated that Plaintiff was "able to do some work off and on, maybe she could be trained for some job where she does not have to be around [a] lot of people and can do some work for at least a few hours a day." Plaintiff reported that her constipation got worse when she did a lot of heavy lifting and that she had lost some weight because she felt bloated due to constipation. Dr. Patel thought that Plaintiff's gastroenterologist might be able to give more input on how much work she could do. Regarding Plaintiff's anxiety, Dr. Patel noted that she was only on diazapam (Valium), and thought that more aggressive treatment might help. He also believed that birth control might help her painful menstruation and that her OB/GYN might give better input regarding this condition. Dr. Patel opined that Plaintiff was able to do basic activities at home without any problems. (R.pp. 292-294).

Dr. Ruffing, a psychologist, conducted a consultative mental status examination on June 5, 2012. Plaintiff reported that she suffered from social phobia, depression, and problems thinking clearly. Plaintiff described extreme emotional discomfort, lots of anticipatory anxiety, and physical symptoms including muscle tension, body trembling, facial trembling, dizziness, and muscle stiffness. Plaintiff stated that she had worked as a cashier and sandwich maker, but had to stop working because of anxiety and depression. At the time of the examination, she was working four to five hours a night, four nights a week, in her family's janitorial business. She listened to music, watched television, and went on the internet in her room away from other people including family members. Dr. Ruffing noted that Plaintiff was able to care for her personal needs; did not have a



6

driver's license; did not have any friends; went shopping with her mother; and was able to participate in meal preparation, cleaning, and laundry. He indicated that Plaintiff completed the intake questionnaire by herself, and it was accurate and complete. Dr. Ruffing found that Plaintiff was fully oriented and that she had spontaneous and responsive speech; intact expressive and receptive language capacity; appropriate affect with normal range and intensity; no suicidal ideation; goal directed, logical, coherent, and relevant thoughts; no history of psychiatric hospitalization; no evidence of psychosis; and limited social interactions even with family members. Additionally, a mini-mental status exam was performed which showed that Plaintiff's mental status functioning was within normal limits.

Dr. Ruffing's impression was that Plaintiff seemed to have a significant amount of social and emotional immaturity; there were indicators of social anxiety, which fit the classification of social phobia; and that she might have schizoid personality disorder. Dr. Ruffing opined that Plaintiff was able to understand and respond to the spoken word; was able to focus and attend; likely would have difficulty interacting appropriately in a socially healthy and appropriate manner given her psychological issues; cognitively could likely perform simple and repetitive tasks and understand, remember, and carry out detailed instructions; and would be capable of managing her finances if awarded benefits. He also opined that because of her emotional issues, Plaintiff would likely struggle to manage the concentration, persistence, and pace required in a typical work environment. (R.pp. 295-298).

On June 21, 2012, Dr. Judith Von, a state agency psychologist, opined that Plaintiff had no restrictions in her activities of daily living; moderate difficulties maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no repeated



episodes of decompensation.  Dr. Von also thought that Plaintiff was able to complete simple and detailed tasks; was able to sustain attention and concentration for two-hour periods sufficient to complete an eight-hour workday with regular breaks; would work best in an environment with only casual contact with others; and was able to accept criticism that was non-threatening and direct. (R.pp. 99-102).

On August 3, 2012, a student therapist at Westgate noted that Plaintiff was fighting with her family and could "not get over how life is." Plaintiff's transfer to the mental health clinic was discussed. Plaintiff was noted to be cooperative, shy, and friendly; her affect was sad, and her mood at the end of the session was upset. The session focused on stress management, and Plaintiff's GAF was assessed as 47. (R.p. 301). A summary from Westgate dated August 28, 2012 indicated that Plaintiff began therapy there in May 2010 and attended forty sessions. It was noted that Plaintiff had made good therapeutic use of their time; her diagnoses were anxiety disorder and avoidant personality disorder; and her GAF was 47. (R.p. 300).

On October 9, 2012, Dr. Hedden completed a check-the-box medical assessment form concerning Plaintiff's mental ability to sustain work-related activities. Dr. Hedden opined that Plaintiff could not function satisfactorily (specifically circling that she could function zero percent of an eight-hour workday) as to the categories of relate to co-workers; deal with the public; interact with supervisors; deal with ordinary work stresses; understand, remember, and carry out complex job instructions; and relate predictably in social situations. He thought she could use judgment eighty percent; understand, remember, and carry out detailed, but not complex, job instructions twenty percent; and behave in an emotionally stable manner eighty percent of the workday. Dr. Hedden thought Plaintiff could function satisfactorily one hundred percent of the workday as to the ability to



follow work rules; function independently; maintain attention/concentration; understand, remember, and carry out simple job instructions; maintain personal appearance; and demonstrate reliability. (R.pp. 365-366).

On October 11, 2012, Dr. Craig Horn, a state agency psychologist, opined that Plaintiff had no restrictions in her activities of daily living, moderate difficulties maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no repeated episodes of decompensation. He also opined that Plaintiff was able to complete simple and detailed tasks, sustain attention and concentration for two-hour periods sufficient to complete an eight-hour workday with regular breaks; would work best in an environment with only casual contact with others; and was able to accept criticism that was non-threatening and direct. (R.pp. 123-127).

Plaintiff's medical records indicate no further treatment until February 2013, when she began treatment and counseling at Spartanburg Area Mental Health Center (SAMHC). Plaintiff complained to a counselor about social anxiety and asked multiple times about getting help to obtain disability payments. (R.p. 372). On March 8, 2013, Jennifer Leigh Gault, a therapist at SAMHC, did an initial clinical assessment, during which Plaintiff reported being unable to go out in public without feeling dizzy and disconnected and that she thought people looked at her in a judgmental manner. Ms. Gault noted that Plaintiff had signs and symptoms of trauma, which Plaintiff denied, and Plaintiff stated she was bullied at school. (R.pp. 370-371). During a therapy session on April 18, 2013, Ms. Gault noted that Plaintiff continued to believe that nothing was going to be able to fix her, although she wanted things to be different than they were. She noted that Plaintiff had not progressed in therapy over several years and recommended that Plaintiff get medications that might help reduce her high levels of anxiety. (R.p. 369). On May 30, 2013, Ms. Gault discussed Plaintiff's condition with



Plaintiff's father, who stated that Plaintiff was more depressed after therapy and felt that she needed a break from treatment. Ms. Gault wrote that Plaintiff's current status was "debilitated by stress and anxiety." (R.p. 368).

On August 29, 2013, Dr. Winter, a psychiatrist at SAMHC, evaluated Plaintiff for chronic anxiety. Plaintiff reported that when she went out she experienced dizziness and tenseness that made her body feel rigid. Plaintiff reported fantasies of having relations with others. He noted that Plaintiff displayed ambivalence in decision making. Although Plaintiff found Luvox, a selective serotonin reuptake inhibitor [SSRI] antidepressant, tolerable, it was unaffordable to her and she stated that she could barely afford her prescribed Valium. Examination revealed that Plaintiff had no delusions, had logical and goal-directed thoughts, and had no homicidal or suicidal ideation. Although Plaintiff was noted to have depressive thoughts, Dr. Winter thought that anxiety was her main problem. He stated that Plaintiff did not do well with confrontation and that supportive comments worked best. Dr. Winter also indicated that Plaintiff was hypersensitive to any advice or direction. (R.pp. 378-379).

On December 12, 2013, Dr. Winter noted that Plaintiff was fully oriented, cooperative, and had good concentration skills. He diagnosed her with panic disorder with agoraphobia and avoidant personality disorder, and assigned her a GAF of 55.[7] However, notwithstanding these relatively moderate findings, in the "Extra Notes" section of the treatment record, Dr. Winter wrote:

> Therapists should not blow off this client's anxiety. It is real and disabling: tried work but could not hack it. Went to voc rehab. They told her: you have to go back to mental health and keep working on the anxiety. She will not get much better. She

---

[7]A GAF of 51 to 60 indicates that only moderate symptoms are present. Perry v. Apfel, No. 99-4091, 2000 WL 1475852 at *4 (D.Kan. July 18, 2000); Matchie v. Apfel, 92 F.Supp.2d 1208, 1211 (D.Kan. 2000).



can't tolerate, as many other people, the effects of [SSRI] drugs. She has been on most. She can't tolerate a higher benzo dose either, as she has to care for her parents, which demands that she not take naps, be lethargic etc. So she is stuck in a bad space. Will need to return for ongoing suboptimal [treatment] of a severe anxiety disorder.

(R.pp. 376-377).

On December 19, 2013, Ms. Carla Turner, a case manager at SAMHC, met with Plaintiff to discuss needs and expectations. Plaintiff expressed reservation about therapies and was informed of different possible interventions which Plaintiff stated she was willing to try. (R.p. 375).

## I.

### (Opinion Evidence - Consultative Psychologist)

Plaintiff alleges that the ALJ failed to properly evaluate the opinion of consultative psychologist Dr. Ruffing because, although the ALJ mentioned some of Dr. Ruffing's findings earlier in her decision, the ALJ did not specifically address the fact, or explain away, Dr. Ruffing's finding that "[b]ecause of her emotional issues, [Plaintiff] would likely struggle to manage the concentration, persistence, and pace required in a typical work environment." Plaintiff's Brief, ECF No. 10 at 18. However, it is clear from a plain reading of the decision that the ALJ considered Dr. Ruffing's findings, discussing them in detail in part 3 of her decision. (R.p. 20). The ALJ noted that Dr. Ruffing's examination included testing, a clinical interview, and observations, with the ALJ further noting that the examination was thorough and consistent with the evidence of record. The ALJ specifically gave Dr. Ruffing's findings great weight. (R.p. 24).

Notably, although Dr. Ruffing did state that it was likely that Plaintiff would struggle to manage concentration, persistence, and pace, he did not place any restrictions on her ability to work or opine that she was disabled from any work activity. Further, Dr. Ruffing specifically found that



Plaintiff "attended and focused without distractibility, though she did demonstrate slowing to her speed of cognitive processing," she "demonstrated good mastery of cognitive faculties," and achieved a raw score of 30/30 on the Folstein Mini-Mental Status Exam (on which a score of 24 or higher suggested mental status functioning within normal limits). (R.p. 297). In his summary of capacities, Dr. Ruffing further specifically noted that Plaintiff "was able to focus and attend." (R.p. 298). After considering all of the evidence and giving great weight to Dr. Ruffing's opinion, the ALJ addressed these findings by reducing Plaintiff's mental RFC to unskilled work that was not pace driven. (R.p. 22). This RFC is consistent with Dr. Ruffing's overall findings. Richardson v. Perales, 402 U.S. 389, 408 (1971) [assessments of examining, non-treating physicians may constitute substantial evidence in support of a finding of non-disability].

Additionally, Plaintiff's Complaint that the ALJ committed error in her decision by not discussing Dr. Ruffing's findings in even more detail is without merit. The ALJ provided a summary of Dr. Ruffing's findings in the decision. There is no requirement that she had to discuss every line of his report. See Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005); Dykes ex. Rel. Brymer v. Barnhart, 112 F. App'x 463, 467-468 (6th Cir. 2004) [ALJ not required to discuss all the evidence submitted]; Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000) ["ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered"] (citations omitted); Carlson v. Shalala, 999 F.2d 180, 181 (7th Cir. 1993) [" . . . the ALJ need not evaluate in writing every piece of testimony and evidence submitted. . . .What we require is that the ALJ sufficiently articulate his assessment of the evidence to 'assure us that the ALJ considered the important evidence ... [and to enable] us to trace the path of the ALJ's reasoning.'"]. An ALJ is not required to provide a written evaluation of every piece of evidence, but



need only "minimally articulate" her reasoning so as to "make a bridge" between the evidence and her conclusions. <u>Fischer v. Barnhart</u>, 129 F. App'x. 297, 303 (7th Cir. 2005) (citing <u>Rice v. Barnhart</u>, 384 F.3d 363, 371 (7th Cir. 2004)). The ALJ met this standard in this case, as it is clear that she reviewed and considered the records and opinions of Dr. Ruffing in reaching her decision. <u>Cf.</u> <u>Thomas v. Celebreeze</u>, 331 F.2d 541, 543 (4th Cir. 1964) [court scrutinizes the record as a whole to determine whether the conclusions reached are rational]. This claim is therefore without merit.

## II.

### (Treating Physicians)

Plaintiff also alleges that the ALJ erred in discounting the opinions of her treating physicians, Drs. Hedden and Winter. <u>See</u> <u>Craig v. Chater</u>, 76 F.3d 585, 589-590 (4th Cir. 1996) [Noting importance of treating physician opinion]. The Commissioner contends that the ALJ properly afforded these opinions little weight, and the undersigned can find no reversible error in the ALJ's consideration of this evidence.

First, contrary to Plaintiff's assertions, the ALJ adequately considered treating physician Dr. Winter's statements, and there is substantial evidence in the case record to support her having given them little weight. <u>Laws</u>, 368 F.2d at 642 [Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion"]. Dr. Winter's statements, as noted by the ALJ, are vague (R.p. 24) in that Dr. Winter merely stated in December 2013 that Plaintiff's anxiety was "real and disabling," that she "could not hack work" because she went to "voc rehab" where she was told to go back to mental health and keep working on her anxiety, and that Plaintiff needed to return for ongoing suboptimal treatment of her severe anxiety disorder. (R.p. 377). No functional limitations accompany these statements, which fail to establish a case for

13



disability, as a determination of whether an individual is "disabled" or "unable to work" is a decision reserved to the Commissioner. (R.p. 27). See Castellano v. Secretary of Health & Human Servs., 26 F.3d 1027, 1029 (10th Cir. 1994) [physician opinion that a claimant is totally disabled "is not dispositive because final responsibility for determining the ultimate issue of disability is reserved to the [Commissioner]"]; 20 C.F.R. § 404.1527(d)[" A statement by a medical source that you are "disabled" or "unable to work" does not mean that we will determine that you are disabled."]. Dr. Winter nowhere explains in this report how Plaintiff's anxiety impacted her ability to work, while the actual results of his examination and findings support the RFC assigned by the ALJ. Specifically, as noted by the ALJ, Dr. Winter's December 2013 statements are not supported by his own treatment notes, Plaintiff's activities of daily living, and Plaintiff's GAF score. (R.p. 24). See Krogmeier v. Barnhart, 294 F.3d 1019, 1023 (8th Cir. 2002) ["[W]hen a treating physician's opinions are inconsistent or contrary to the medical evidence as a whole, they are entitled to less weight" (citations omitted)]; see also Hays, 907 F.2d at 1456 [It is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence].

The record shows that on August 29, 2013, Dr. Winter found on examination that Plaintiff had logical and goal-directed thoughts and no homicidal ideations; (R.p. 378); while in December 2013, Dr. Winter noted that Plaintiff was fully oriented and had good concentration skills. He assessed her with a GAF of 55 at that time (R.p. 377), which was indicative of no more than moderate limitations. See Perry v. Apfel, No. 99-4091, 2000 WL 1475852 at *4 (D.Kan. July 18, 2000); Matchie v. Apfel, 92 F.Supp.2d 1208, 1211 (D.Kan. 2000). The ALJ's RFC determination is consistent with these findings. Additionally, Dr. Winter's comment concerning disabling anxiety is not supported by Plaintiff's activities of daily living, as Plaintiff testified that she worked with her



father four days a week cleaning offices at night; spent her days playing on the computer, surfing the internet, watching videos, and reading; enjoyed scrapbooking and was able to go shopping to get supplies; and was able to prepare simple meals and perform chores such as laundry, dishwashing, and changing bed sheets.  (R.pp. 23, 58, 61-65).  A claimant's daily activities can support the ALJ's discounting of a treating physician's opinion.  Milam v. Colvin, 794 F.3d 978, 984 (8th Cir. 2015); see Craig, 76 F.3d at 590 [determining that treating physician's medical notes and claimant's reported daily living activities were persuasive evidence that contradicted physician's conclusory opinion based on claimant's subjective reports of pain); Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600-02 (9th Cir. 1999) [considering inconsistency between treating physician's opinion and claimant's daily activities to be specific and legitimate reason to discount treating physician's opinion];  Chavis v. Apfel, 166 F.3d 331, 1998 WL 827322, at *3 (4th Cir.  1998) [Table]["Here, the ALJ properly discounted the opinions of several of [the claimant's] treating physicians that she was disabled because the opinions were conclusory and inconsistent with various activities that [the claimant] has engaged in over the years."]; see also Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005)[Accepting ALJ's finding that claimant's activities were inconsistent with complaints of incapacitating limitations where she engaged in a variety of activities]; Mastro v. Apfel, 270 F.3d 171, 179–80 (4th Cir. 2001) [finding that "[t]he ALJ properly considered [the claimant's] reported activities," among other evidence, in concluding that the claimant's physical impairments did not limit her ability to work].

The ALJ's decision to discount Dr. Hedden's opinion of disability is also supported by substantial evidence.  The ALJ stated she gave Dr. Hedden's opinion little weight because:

> beyond check marks placed on a form devised by the claimant's representative, these findings are not supported by any adequate explanations or any objective clinical [signs], diagnostic studies, or laboratory findings.  Dr. Hedden's statements are further



> contradicted by the other medical evidence of record and by his own examinations,
> which reveal minimal mental health abnormalities.

(R.p. 24). There is no reversible error for this finding shown in the record of this case. Medical records indicate that Dr. Hedden treated Plaintiff on only one occasion (on March 27, 2012) after her alleged onset of disability date (on March 15, 2012), at which time it was noted that this was the first time he had seen her after a two-year absence.[8] Plaintiff wanted to renew her Valium (which she stated she took as little as once a week), and she had not been to other physicians since her previous visit to Dr. Hedden. There is not another record from Dr. Hedden until his completion of the questionnaire seven (7) months later, at which time, as found by the ALJ, Dr. Hedden failed to provide any supporting medical findings or evidence for the limitations he checked. (R.pp. 365-366).

Additionally, a review of the questionnaire shows that with respect to the limitations Dr. Hedden found on Plaintiff's ability to make occupational adjustments, he merely reiterated the same information asked by the questions (stating only that she was "unable to interact with other workers, supervisor or the public"); as to his opinion that Plaintiff was unable to understand, remember, and carry out complex or detailed instructions, he merely wrote "memory-organization";[9]

---

[8] Plaintiff's previous visit was on April 8, 2010, at which time it was noted that Plaintiff had been absent from the practice since 2007 (although she had been going through St. Lukes Clinic for care). At the April 2010 visit, Plaintiff told Dr. Hedden that she would like to be on disability and asked for help with that. Physical examination was essentially normal, except for complaints of discomfort across Plaintiff's epigastrium as well as her hypogastrium, but no masses or enlarged organs were felt in her abdomen. Dr. Hedden ordered bloodwork and encouraged Plaintiff to followup with Dr. Montagne about her intestinal problems. He noted that Plaintiff had taken Valium in the past with two bottles lasting three years, indicating she did not take it very frequently. Lexapro (antidepressant) samples were given to Plaintiff, along with a refill (60 pills) of Valium. (R.p. 288).

[9] As noted above, the ALJ limited Plaintiff to unskilled work. Unskilled work is defined as "work which needs little or no judgment to do simple duties that can be learned on the job in a short (continued...)



and as to limitations in making personal-social adjustments, he merely wrote "withdrawn socially."

(R.pp. 365-366). The undersigned can discern no reversible error in the ALJ's decision to discount

these statements. See 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) ["The more a medical source

presents relevant evidence to support an opinion, particularly medical signs and laboratory findings,

the more weight we will give that opinion. The better an explanation a source provides for an

opinion, the more weight we will give that opinion."]. Dr. Hedden had himself noted that Plaintiff

was taking Valium as little as once a week for her condition, and that when she had returned to see

him, she was at that time working as a cleaner. (R.p. 287). See Smith v. Chater, 99 F.3d at 638 ["The

duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court"].

      Dr. Hedden's questionnaire answers are also inconsistent, as he found that Plaintiff was

capable of following work rules, using judgment, and functioning independently; maintain attention

and concentration; understand, remember, and carry out simple job instructions; maintain personal

appearance; demonstrate reliability; and manage her own benefits, conclusions contradictory to his

other findings. (R.pp. 365-366). See 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)["Generally, the more

consistent an opinion is with the record as a whole, the more weight we will give to that opinion."];

see also Craig, 76 F.3d at 590 [holding there was sufficient evidence for the ALJ to reject the treating

physician's conclusory opinion where the record contained contradictory evidence]. Further, and

contrary to Plaintiff's arguments that the ALJ erred in ignoring opinion evidence and giving

significant weight to the non-examining physician opinions, the ALJ's decision is supported by

_____

[9](...continued)
period of time.... [A] person can usually learn to do the job in 30 days, and little specific vocational
preparation and judgment are needed." 20 C.F.R. § 404.1568(a); SSR 83–10, 1983 WL 31251, at *7.



substantial evidence as she properly gave great weight to the opinions of the consulting physicians, which support the ALJ's RFC findings. (R.pp. 292-298). See Richardson, 402 U.S. at 402 [assessment of examining physicians may constitute substantial evidence in support of a finding of non-disability]. The ALJ also gave great weight to the opinions of the state agency physicians and psychologists, who did not find that Plaintiff's impairments were of a disabling severity. (R.pp. 99-102, 123-127). See Johnson v. Barnhart, 434 F.3d 650, 657 (4th Cir. 2005)[ALJ can give significant weight to opinion of medical expert who has thoroughly reviewed the record]; 20 C.F.R. §§ 404.1527(e); SSR 96-6p, 1996 WL 374180, at *1 (July 2, 1996) ["Findings of fact made by State agency ... [physicians ]... regarding the nature and severity of an individual's impairments must be treated as expert opinion of non-examining sources at the [ALJ] and Appeals Council level of administrative review."].

In presenting her arguments, Plaintiff appears to be asking this court to reweigh this evidence, rather than determine whether it provides substantial evidence (as that term is defined by the applicable caselaw) to support the ALJ's decision. However, that is not the role of this court. Blalock, 483 F.2d at 775 ["[T]he language of [405(g)] precludes a *de novo* judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'"]; see Craig v. Chater, 76 F.3d at 589; Johnson v. Barnhart, 434 F.3d at 653 ["In reviewing for substantial evidence, we do not undertake to itself reweigh conflicting evidence...."]; Mastro v. Apfel, 270 F.3d at 176 [holding that the court is not to "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of" the agency]; Hays, 907 F.2d at 1456 [It is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence]. After careful review of the record, the

18



undersigned can find no reversible error in the ALJ's treatment of the opinion evidence, and these claims of error are therefore without merit.  Poling v. Halter, No. 00-40, 2001 WL 34630642, at * 7 (N.D.W.Va. Mar. 29, 2001)["It is the duty of the ALJ, rather than the reviewing court, to assess the evidence of record and draw inferences therefrom"]; Guthrie v. Astrue, No. 10-858, 2011 WL 7583572, at * 3 (S.D. Ohio Nov. 15, 2011), adopted by, 2012 WL 9991555 (S.D.Ohio Mar. 22, 2012)[Even where substantial evidence may exist to support a contrary conclusion, "[s]o long as substantial evidence exists to support the Commissioner's decision . . . this Court must affirm."]; Kellough v. Heckler, 785 F.2d 1147, 1149 (4th Cir. 1986) ["If the Secretary's dispositive factual findings are supported by substantial evidence, they must be affirmed, even in cases where contrary findings of an ALJ might also be so supported."] (citation omitted)]; see also Bowen, 482 U.S. at 146 [Plaintiff has the burden to show that she has a disabling impairment].

### Conclusion

Substantial evidence is defined as "... evidence which a reasoning mind would accept as sufficient to support a particular conclusion." Shively v. Heckler, 739 F.2d 987, 989 (4th Cir.1984). As previously noted, if the record contains substantial evidence to support the decision (i.e., if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury), this Court is required to uphold the decision, even should the Court disagree with the decision. Blalock, 483 F.2d at 775.

Under this standard, the record contains substantial evidence to support the conclusion of the Commissioner that the Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time period. Therefore, it is recommended that the decision of the Commissioner be affirmed.



The parties are referred to the notice page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

October 3, 2016
Charleston, South Carolina



### Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

